7-2200 Charlene Richard v. Regional School Unit 57 Thank you. Mr. O'Mara, good morning. Good morning, Your Honor. May I reserve two minutes, please? You may. I'm Richard O'Mara. I represent Charlene Richard, who's the kindergarten teacher that brought this employment retaliation case. As you will know from the briefs, we're here on a very narrow issue because the district court held the best trial, resolved all the disputed credibility issues in my client's favor, found in her favor unprotected conduct on adverse action, found in her favor that the superintendent's reasons were pretextual and false, but in the end concluded that she had not met her burden of proof on the ultimate causation issue, and we believe that is a reversible error. And when you get to that last issue, which is all that's in play here, there are a number of arguments as to where the district court went wrong. The first is on the ultimate issue of causation. The court did not, then, revisit the issue of the close temporal proximity of the protected conduct by the plaintiff and the adverse action that was taken against her. The case law is very clear in a case like this, where there's a strong prima facie case and pretext that the court can rule in the plaintiff's favor. On that basis alone, the district court did not even address that issue. Instead, it went and assumed more evidence of the causal relationship was needed. We then presented that evidence in our trial brief, and all of it was ignored in the district court's decision. When you say ignored, this came up in a case we had earlier today. There seems to be this notion that if there are 17 points and 8 factors that you have, that we reverse the district court if it doesn't mention every one of those points and discuss every one of those factors explicitly in its opinion. And I don't see where that concept comes from. Well, the concept, Your Honor, is that this is not a case where the district court made a finding on causation. It threw its hands up and said, I can't tell, but I know you didn't meet your burden. And so if they're going to say in the decision that we didn't meet our burden, they need to address the evidence that we presented. And the only piece of evidence we presented that was addressed was not addressed correctly as a matter of law, because it was Me Too evidence, evidence that's highly probative of intent, of what happened to another kindergarten teacher the same year who did the same conduct, advocating for a student with disabilities whose needs were not being addressed, went so far as to complain to the State Department of Education, got a letter in her file, and then within a month of when my client was transferred, that teacher, after 12 years at the school, was told, you're being involuntarily transferred. And the district court used the superintendent's words, I'm breaking up the kindergarten team, is what he told her when he handed her that letter. My client had gotten a similar letter. And he was breaking up the team, but the district court said, it's a weak testimony, I think was his phrase, I don't know what that refers to, breaking up the team, and he put that on the other side of the scale in determining whether we met our burden. That is Me Too evidence. That's an exactly similarly situated person who has done the same activity the same school year and had the same exact retaliatory response. My client had been in the district 10 years, she'd been there 12 years, they were both removed within a month of each other for essentially doing the same thing. And the district court said that that didn't account for us on the burden, instead it counted against us. That's improper. That is a reversible error. In addition, the district court did not address what happened right after the key meeting on December 8th when the retaliation began with my client. And that was that the superintendent went into a meeting with parents of a student who had been complaining about bullying to their child, and went in and supported the teacher, my client, and said, the teacher is doing a great job. The problem is you're not supporting the fact that these two students causing trouble have special needs. I'm still, this point is still, there's no indication that the judge fell asleep during the trial or wasn't paying attention to the evidence. And then the judge assumes, I think it's a 67-page opinion, but it's going through the evidence quite extensively and everything. And now the argument being made, I think, is that it should have been at least 68 or 69 pages to discuss some other things. Was there any motion? Was there filing with the judge to say, Your Honor, you forgot this one thing, you need to discuss it too? I don't think there was. We did not file a motion for reconsideration of the final order. And isn't that a better way to handle it rather than us presuming that the court didn't just resolve like a jury could the issue against you without elaborating on more than 67 pages worth of observations? Well, we did not file a motion for reconsideration. All this was in our trial brief, and it was amazing that it was all ignored. He does talk about the fact that the same parents the superintendent went with on December 8th had spoken with the superintendent the week before. But then he leaves out the fact that when they came to meet with the superintendent and told them they thought the teacher was doing a great job, but that the district needed to do more to support the two kids who had disabilities, that the parents were told by the superintendent that the teacher had, the prior year, had a similar issue and that the district had had to address it. That's a direct reference to her prior advocacy for another student in the same position who needed extra services. It shows that that issue was on the superintendent's mind the very day that the district court says he can't figure out why the superintendent was taking the actions that he did. So in a case like this, it's not a factual finding that deserves clear error analysis. This is a question of a district court throwing up its hands saying he uses the words baffled. He says it's inexplicable. He cannot figure out what happened. He did not throw up his hands. He concluded in the end that you had not met your burden of proof in a very carefully tailored, long opinion which was extremely critical of the superintendent of schools but found that you hadn't shown that the real reason was retaliation. Right. But he also doesn't choose what the true reason was for the superintendent's action. When I say he threw up his hands, he said there was no conclusion other than we didn't put out enough evidence of the retaliation being caused by animals. And that's where I take issue because we did present that evidence and it's referenced nowhere in the decision. First, I don't think we needed to present more evidence. He could have ruled on the pretext alone. No, maybe your evidence just simply isn't sufficient. Well, he does cite it. He cites the fact that Ms. Alcester had a difficult meeting with the superintendent but never identifies her. I'm not saying the opinion is complementary to the superintendent of schools or indeed to the principal of the school, but that doesn't mean you're relieved of your burden of proof. I'm not saying we're relieved of any burden of proof, Your Honor. We are accepting the burden. What I'm saying is we presented evidence about the similarly situated teacher and the district court did not recognize that evidence, apparently, for the meeting evidence of intent that it is, and that is an error that's reversible. The court should have taken stock of the fact that evidence of a similarly situated person who suffered the exact same retaliatory response the same school year for the same behavior does not go against my client. I mean, he cited three reasons that he put out that the superintendent may have acted in a way that he found incomprehensible. One was the confidentiality breach, and I see my time has expired. Yes, thank you. Thank you. Good morning, Ms. McCormick. Good morning. May it please the Court, I'm Gina McCormick, counsel for the appellee in this case, Regional School Unit 57. The appellant has raised a number of facts that she would have liked the district court judge to weigh differently or draw alternative inferences from. However, taking a step back, that's asking for quite extraordinary relief in this case. There was a five-day bench trial. Both parties submitted post-trial briefs. The appellant in this case submitted a post-trial brief where she set forth all of the facts that she is now raising on appeal, as well as the inferences that she believed the court should have drawn from those facts. And she also submitted a reply brief, again, setting forth those facts that she believed the district court should have considered. After the district court judge considered the evidence at trial, as well as the post-trial briefs with proposed findings of fact and conclusions of law, as has already been discussed, the district court judge issued a thoughtful 67-page decision with 36 pages of findings of fact. Appellant's counsel has cited to a couple of specific factual issues here today. And he claims that he is arguing that the district court judge should have reached different inferences based on that factual evidence. However, it is now believed his argument is the district court was required to make specific factual findings on each of these points, and the district court's discussion of these points did not amount to findings. I think that's what he's arguing. If that is what he is arguing, then the law does not support that argument for the reasons that Judge Kayotte has already mentioned, as well as that it is not a requirement of Rule 52A1. Again, one of the facts that Appellant's counsel has raised was this fact about Ms. Alcesor, the other kindergarten teacher. He has referred to it as Me Too evidence. The district court judge's decision on page 62 talks about this testimony, and he concluded that the testimony was oblique. On page 63 of the decision, he says that it was never clear what the problem was with the kindergarten teachers as a whole. Again, this goes to the fact that at the end of the case, the district court judge concluded that Ms. Richard did not prove her burden of showing that the school's adverse actions against her were because of her advocacy for these two students. Well, the district court did find that the reasons given were a pretext. Did he not? That is true. Well, how does that affect your argument? So, the case law is clear here that even if a district court judge finds, as it did in this case, that a plaintiff has established a preemptation case, and then the defendant articulates a legitimate reason, but the court then finds that reason to be pretextual, at the end of the day, the plaintiff still has the burden of showing that the reason for the adverse action was a discriminatory reason. What was the timing here? The timing in terms of the adverse actions? Between, yes. So, the district court described the heart of this case as being a December 8th meeting between the superintendent, the two administrators, a union representative, and the teacher, Mrs. Richard. Prior to that case, Ms. Richard had a very good relationship with her administrators throughout the beginning of the school year that fall. And, in fact, she had gone to the administrators on a number of occasions. Could you answer the question, please? Discussing the timing between that December 8th meeting and the transfer of... I apologize, Your Honor, the transfer was within a few months. Can you just tell me more specifically how much time? I'm trying to look it up. So, my understanding is the meeting was on December 8th, and then there was notice to the employee, and I'm sure my opposing counsel will correct me if I'm wrong, but that she was notified of a transfer that spring, I believe the middle of March. So, we're talking about three months, more or less. Correct. What does that do? What does that mean in terms of causation? In terms of causation, Your Honor, what the district court found, and what is reasonable and not clearly around this, is that although she was transferred, it's not clear that it was because she was advocating for these students. There were a number of other things going on. Can you tell me some of them? Yes, Your Honor. In that three-month period, what happened to bring about that action? In that three-month period, the school was made aware that at parent-teacher conferences, eight parents had complained about the conduct in this teacher's classroom. The administrators then began to observe her classroom more closely, and they did not believe that she was managing it well. When was the decision made to break up the kindergarten team? Ms. Alcesor was transferred. No, no, I didn't ask that. Who made the decision to break up the kindergarten team? The superintendent transferred the other kindergarten teacher, which is presumably this decision to break up the team, on the advice of the building administrators. Again, it was not his. And when was that given? My understanding is that Your Honor, I don't have a specific date. Was it also given in the spring? It may have been. Why would the superintendent have... I mean, the pretext finding suggests he just gave a bogus reason, and gave a bogus reason to the court. Why would he have... That creates a pretty strong inference, doesn't it, that he's hiding the real reason. Your Honor, the case law is that even if you do not believe the offered reason, that does not necessarily mean that the true reason is a discriminatory reason. Does it create enough of an impetus that you would want to know what the true reason... to reject the most obvious reason? Can you reject it without another candidate in mind as the real reason? Yes, Your Honor. If anything, the fact that the district court judge rejected the superintendent's offered reason shows that it was assessing this evidence critically. And if anything, that goes in the plaintiff's favor. Yeah, in the defendant's favor. If the district court finds the superintendent is not telling the truth about his reason, it's true our case law says, well, you can still make a finding that there was no discrimination or no retaliation, because you haven't proven that the real reason is itself discriminatory or retaliatory. But here the district court seems to say, well, I'm not satisfied I got the real reason, but I am satisfied that... And he makes a number of very critical comments. The superintendent exercised bad judgment. He misunderstood the information he was given. He caused the principal to kowtow to what he wanted. And that's more likely what happened here. And the plaintiff hasn't proven to me that it's retaliatory. I mean, I think that's what the district court says. That's exactly what the district court says. Okay, so this is outside of this case. So what happened to that superintendent? He retired. When did he announce his retirement? He had planned to retire prior to this case. The facts of this case... Did he retire at the end of the school year? He did. And he had announced earlier he was going to retire. Yes, he left on favorable terms. It was entirely his decision. I'd be careful about saying he left on favorable terms after this criticism from the district court judge. Favorable terms from within the school community. Is the nature of what was discussed in that meeting and his statements that were proven completely incorrect of any relevance? I'm sorry, Your Honor. Could you repeat that? The nature of what was discussed in the December 8th meeting? Yes, what he said had taken place that was refuted by the plaintiff. Right, and so I believe the district court's take on that was the superintendent went to this meeting. He did not understand the day-to-day operations of what was happening in the classroom because he didn't have personal knowledge of that. He was basing his understanding on what he believed to be poor classroom management on reports that he was getting from his administrators as well as parents who were making complaints. And the district court concluded that the superintendent may have believed that she was not managing her classroom well and blaming these two boys for what was happening. However, the district court also concluded that that belief was incorrect. I can't find my notes, so I'm going to take up your time. Thank you. Thank you. Let me start right there, Your Honor, because one of the suppositions the district court made at the end was perhaps the superintendent mistakenly thought that the teacher was blaming these two boys for the problems she was having in the classroom. My point is that, again, should be on our side of the ledger for causation in the preponderance analysis because the phrase, she's blaming the two boys for what's happening in the classroom, is exactly what she was doing. She was saying these two boys have special needs. That's why she referred them. That's why she sought additional support. She was saying that she as a general education kindergarten teacher with 22 kids could not provide the level of support they needed. So when the superintendent incorrectly says, you're just blaming the two boys, that's advocacy. This, to me, is an entirely new theory that blaming the two boys is, in fact, a recognition that they were special needs students and she was advocating for them. That was the area on which you tried this case? This is in our brief, Your Honor. We said specifically in the brief that when the superintendent mistakenly says the district court said he was wrong about the fact that she was a poor performer, but if he believed she was saying she couldn't handle these two kids and was blaming them, that is code for that she is advocating for them to be assessed for special needs because their needs were outstripping what she could do as a general educator. That's within the scope of advocacy that, again, would prompt a retaliatory response. You cannot take a teacher who's saying what's happening in the classroom is beyond my ability. These kids, I think, have special needs, need more support, and then turn around and retaliate against the teacher for saying that, which is exactly what he did on December 8th in the campaign that followed up to the point where he transferred her in the spring. And so we think, again, if that is what the district court thought was going on, it's not clear. Even that suggests that the superintendent knew she was asking for more help with these kids, and that's advocacy. Thank you. Thank you, Joe. Anyone? All right. We'll close this session.